UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CINDY SUE WRIGHT-WENGER,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:15-cv-753

HON. JANET T. NEFF

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 51 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.42, 112.) She obtained a high school education and was previously employed as a bus driver and kitchen aide. (PageID.66, 97–98.) Plaintiff applied for benefits on October 25, 2012, alleging that she had been disabled since April 2, 2012, due to asthma, pain in her knee, problems with her hip and heart, suspected problems with a disc in her back, and difficulties in reading and recollection. (PageID.112, 125, 218–227.) Plaintiff's applications were denied on February 5, 2013, after which time she requested a hearing before an ALJ. (PageID.141–54.) On February 4, 2014, Plaintiff appeared with her counsel before ALJ Michael Condon for an

administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.61–107.) In a written decision dated February 14, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.42–60.) On June 1, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (PageID.47.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) diabetes mellitus; (2) chondromalacia of the right knee; (3) degenerative disc disease of the thoracic and lumbar spine (status-post surgery) with probable chronic right L4 radiculopathy, and (4) asthma. (PageID.47.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.49–50.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; and occasionally climb ladders and stairs, balance, stoop, kneel, crouch, and crawl. She can have no concentrated exposure to temperature extremes, humidity, vibration, fumes, odors (including perfumes), dusts, gases, or areas of poor ventilation. She can have no exposure to workplace hazards, including unprotected heights and dangerous moving machinery. She can have no operation of leg or foot controls with the right lower extremity, and she can do no ambulation over uneven terrain.

(PageID.50.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.53.) At the fifth step, the ALJ questioned the VE

4

to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: assembler of small products (1,150 Michigan jobs and 48,000 national jobs), sorter of agricultural produce (1,200 Michigan jobs and 50,000 national jobs), and checker I clerk (1,100 Michigan jobs and 47,000 national jobs). (PageID.98–99.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.55.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from April 2, 2012, through February 14, 2014, the date of the decision.  (PageID.55.)

## DISCUSSION

### 1. Plaintiff Has Not Shown the ALJ Erred in His Treatment of the Consultative Examiner's Opinion.

On January 28, 2013, Dr. Theodore Brooks, M.D., a consultative examiner, met with Plaintiff and provided a report summarizing his findings. (PageID.442–45.)  Dr. Brooks' report began by documenting Plaintiff's complaints, and then summarized the results of a physical examination which generally demonstrated normal findings.  He noted, however, some pain in Plaintiff's dorsolumbar spine upon range of motion, as well as a reduced grip strength of 48.8 pounds in her left hand and 53.2 pounds in her right. (PageID.127.) Dr. Brooks found Plaintiff was able to straight leg raise bilaterally to ninety degrees in the seated position and to eighty degrees in the supine position. (PageID.443.) He noted that the examination "revealed poor handgrip strength; moderately elevated blood pressure; [and] expressions of pain consistent with lumbar spine pathology." (PageID.444–45.)  Dr. Brooks further noted, however that forward hip flexion did not elicit back pain, she had normal range of motion, and entered her car with ease after leaving the

5

examination. (PageID.445.) Dr. Brooks concluded his report by stating:

> The claimant should be able to work in a seated or standing position with ability to move about as needed and with moderate limitations in walking. Use of bilateral extremities for lifting, carrying, pushing and pulling is normal. Bilateral hand grip strength is below normal. The claimant should be able to use both hands for fine manipulation. There is severe limitation in climbing stairs, ladders or scaffolding.

(PageID.445.) The ALJ gave only "partial weight" to the doctor's opinion regarding Plaintiff's grip strength, noting that subsequent medical reports found no grip strength loss. (PageID.52.) Additionally, the ALJ gave "no weight" to the doctor's opinion on the Plaintiff's need to move about as necessary, noting that it was not consistent with objective testing. (PageID.53.) Plaintiff claims the ALJ erred in two respects: first, by "playing doctor" in rejecting portions of Dr. Brook's opinion, and second in failing to discuss the remaining portion of the opinion that Plaintiff was severely limited in climbing stairs. (PageID.609–11.) The Court disagrees.

The administration recognizes that state agency consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996).[2] "As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including . . . the individual's residual functional capacity." *Id.* "When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other

---

[2] SSRs "are binding on all components of Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

medical specialist, the administrative law judge will evaluate the findings using the relevant factors . . . . Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.926(e)(2)(ii).

The ALJ did not improperly substitute his own lay opinion in determining the RFC. "[A]n ALJ does not play doctor by evaluating the medical evidence because he is required to do so under the regulations." *Wilkins v. Comm'r of Soc. Sec.*, No. 13–12425, 2014 WL 2061156, at *14 (W.D. Mich. May 19, 2014) (citing 20 C.F.R. § 404.1527(c)). "Rather, an ALJ may properly consider the lack of objective evidence supporting [the doctor's] opinion," and the "inconsistency of his opinion with objective testing results." *Id.* This is precisely what the ALJ did in this case. The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a physician's opinions. *See, e.g., Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549–50 (6th Cir. 2014); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012). Furthermore, the ALJ's reasoning is supported by substantial evidence. Additional testing on October 2, 2013, found that Plaintiff had bilateral grip strength within normal limits. (PageID.553.) And, as the ALJ noted, the November 2012 MRI on Plaintiff's lumbar spine found only "mild multilevel degenerative changes without significant stenosis or findings for neural impingement." (PageID.477.) The ALJ did not play doctor in noting the inconsistency between these tests result and the doctor's opinion.

Finally, as a consultative examiner, the ALJ was not "under any special obligation to defer to [Dr. Brooks'] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r*, 414 F. App'x 739, 744 (6th Cir. 2011). Nor was the opinion entitled to any particular weight. *Id.*

The fact that the ALJ did not discuss Dr. Brook's opinion that Plaintiff was severely limited in her ability to climb stairs does not mean it was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). Morever, Plaintiff has not shown how a "severe" limitation in climbing stairs is inconsistent with the RFC for only "occasional" climbing of stairs. Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. She must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

For all the above reasons, Plaintiff's claim of error regarding Dr. Brooks is denied.

## 2. Plaintiff Has Not Shown the ALJ Erred in His Treatment of the Other Source Opinions.

Plaintiff secondly argues the ALJ erred in his treatment of the opinions from Ms. Amy Vincent and Mr. William Blakeslee, an occupational therapist and certified physician's assistant. Among other things, Ms. Vincent opined that Plaintiff's limitations confined her to a sedentary work category. (PageID.548.) Mr. Blakeslee opined that this opinion was consistent with the record. (PageID.583–84.) While Plaintiff concedes that both Ms. Vincent and Mr. Blakeslee are not "acceptable medical sources" according to 20 C.F.R. §§ 404.1513(a) and 416.913(a), and instead are properly characterized as "other sources," it is Plaintiff's position that the ALJ was nevertheless required to analyze Ms. Vincent's and Mr. Blakeslee's opinions using the following factors: how long the source has known and how frequently the source has seen the individual, how

consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source's specialty or area of expertise related to the individual's impairment, and any other factors that tend to support or refute the opinion. (PageID.610–14) (citing SSR 06–03p, 2006 WL 2329939, at *4–5 (Aug. 9, 2006)).

Contrary to Plaintiff's assertion, the consideration of such factors is not a requirement. While the regulations specify that the opinions of "other sources" must be considered, they do not address how to evaluate such evidence. *See* SSR 06–3p, at *3 ("These regulations [§§ 404.1527(c) & 416.927(c)] provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d).") Importantly SSR 06–03p's discussion on this point takes the permissive form in providing that the factors listed by Plaintiff only "can be applied," to opinion evidence from "other sources." *Id.* at *4. Moreover, "[n]ot every factor for weighing opinion evidence will apply in every case." *Id.* "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source'[.]" *Id.* at *5. However, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Similar considerations apply to opinions from non-medical sources. *Id.*

The ALJ appropriately considered such factors. The ALJ noted Ms. Vincent's specialization as an occupational therapist, and that her conclusions were not consistent with objective medical findings. (PageID.53.) Similarly, the ALJ noted Mr. Blakeslee specialized as a

physician's assistant, and noted the lack of specifics contained in Mr. Blakeslee's statement. (PageID.53.) Finally the ALJ recognized that both individuals could not be considered a treating source. (PageID.53.) This determination was legally correct. "[O]nly 'acceptable medical sources' can be considered treating sources." SSR 06–3p, at *2. This determination was relevant to weighing the opinion evidence. *Id.* ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment."). Consequently, the record does not point to legal error in the ALJ's treatment of Ms. Vincent or Mr. Blakeslee.

### 3. The ALJ Properly Considered Plaintiff's Subjective Allegations.

At the hearing, Plaintiff testified that she could not work because of her back and right knee pain, diabetes and asthma. (PageID.70–71, 75, 77.) The ALJ found Plaintiff's allegations were "not entirely credible." (PageID.51.) Plaintiff alleges the ALJ failed to properly consider her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

>  whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The record simply does not support Plaintiff's allegations. For example, the ALJ

11

noted that the November 26, 2012, MRI found only "mild multilevel degenerative changes without significant stenosis or findings for neural impingement" and correctly noted that this was inconsistent with Plaintiff's reports of disabling back pain. (PageID.51, 477.) At other examinations, Plaintiff had normal test results. (PageID.343, 410, 506.) She had normal muscle tone and strength. (PageID.485.) An x-ray on Plaintiff's right knee came back negative. She did not need any injections, surgery, or physical therapy. (PageID.461–63.) An EMG study was "probable" for right L4 radiculopathy, but there was no acute denervation changes found, and only mild distal sensorimotor polyneuropathy. (PageID.456.) While Plaintiff stated she coughed three to four times a day, she found her medication to be sufficient at controlling her asthma. (PageID.442.) Plaintiff testified her difficulties with diabetes occurred mainly in the evening. (PageID.51, 71.) She reported being able to perform activities such as "driving, opening a jar, bathing herself, sweeping and mopping, buttoning and zipping her clothing, dressing and undressing herself, picking up a coin off the table and writing clearly." (PageID.442.) The ALJ correctly noted that all this was inconsistent with Plaintiff's complaints.

Moreover, Plaintiff consistently reported improvement after injections—ranging from forty to one hundred percent. (PageID.526, 528, 531, 534, 536.) The ALJ did not err in characterizing this treatment as conservative. *See Hauser v. Comm'r of Soc. Sec.*, No. 1:12-cv-796, 2014 WL 48554, at *9 (S.D. Ohio Jan. 7, 2014), *report and recommendation adopted*, No. 1:12-cv-796, 2014 WL 221946 (S.D. Ohio Jan. 21, 2014) (characterizing injections as conservative treatment). Finally, Plaintiff argues the ALJ erred in discounting Plaintiff's allegations of side effects. The ALJ found Plaintiff's side effects were not significant. (PageID.52.) The record shows that Plaintiff complained that her medications made her feel sleepy. (PageID.508, 574) In one

instance, the complained of medication was discontinued, in another her prescription was increased. (PageID.510, 575.) One could speculate that the ALJ found Plaintiff's side effects were not significant because otherwise her physician would not have increased the dosage of the complained of medication. In any event, the Court agrees with the Commissioner that any error here is harmless, as the ALJ's discussion of Plaintiff's side effects "does not negate the validity of the ALJ's ultimate credibility conclusion" which is supported by substantial evidence. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Accordingly, Plaintiff's claim of error is rejected.

### 4. The ALJ Properly Applied the Medical Vocational Guidelines.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Pt. 404, Subpt P, App. 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if she satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Comm'r of Soc. Sec.*, 20 F. Supp. 2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff argues that she is entitled to relief because she meets the requirements of Rule 201.14 of the grids. This particular rule, however, applies to claimants with an RFC for sedentary work. 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 201.14. Here, the ALJ assigned Plaintiff an RFC of light work, and applied Rule 202.21 as a framework to find that Plaintiff was

not disabled. (PageID.54.) It appears Plaintiff is arguing that the ALJ's RFC determination is unsupported by substantial evidence for reasons stated in the above arguments. (PageID.617.) As the Court has rejected the above arguments, this argument also must be rejected. The Court has thoroughly examined the record evidence and finds the ALJ's determination that Plaintiff is capable of performing a range of light work is supported by substantial evidence. Plaintiff's argument accordingly fails.

### 5. Plaintiff Cannot Demonstrate Reversible Error in the ALJ's Treatment of the State of Michigan's Disability Determination.

Plaintiff finally contends that the ALJ erred because his decision failed to assign any weight to the determination by the State of Michigan Department of Human Services (DHS) that Plaintiff was disabled as of July 2012. (PageID.567–68.) Plaintiff argues the ALJ should have provided reasons for disagreeing with the DHS decision under SSR 06–03p, which in relevant part provides guidelines for considering decisions of other governmental agencies. (PageID.617.)

As the regulations make clear, the issue of whether a claimant is disabled is reserved to the Commissioner, and a determination made by a state agency is not entitled to any particular weight:

> [a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.

20 C.F.R. §§ 404.1504, 416.904; *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 477 (6th Cir. 2008); *Turcus v. Comm'r of Soc. Sec.*, 110 F. App'x 630, 632 (6th Cir. 2004). SSR 06–03p

further explains:

> [B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Id.* As is evident from the plain language of the ruling quoted above, while it is preferable for an ALJ to explain the consideration he or she gave to a state agency determination, it is not required. In the instant case, the ALJ noted that Plaintiff was found to be disabled by the DHS, but did not provide reasons for disagreeing with the determination beyond noting that he was not bound by it. (PageID.53.). While it may have been preferable for the ALJ to provide a better discussion of the DHS's decision, the regulations do not require more than what the ALJ provided.

Moreover, even if the ALJ erred here, it is harmless. The record contains a short two-page form in which the DHS concluded that Plaintiff was eligible to receive benefits. The state agency's bare bones conclusions are of limited utility. The DHS review process does not appear to include a hearing where sworn testimony is received and later transcribed, nor does it result in any written opinion identifying the specific medical records supporting the conclusion that the Plaintiff was eligible for benefits. Further, even if the DHS process had generated a written opinion, where federal standards were applied and the decision was supported by specific medical records, the agency's opinion would not have been entitled to any particular weight. Federal law entitles the ALJ to make his own evaluation of Plaintiff's testimony and whether the evidence in the administrative record establishes that Plaintiff is disabled. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527, 416.927. Accordingly, Plaintiff's claim is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.


Dated: July 21, 2016                             /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge